UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

THE JAMESTOWN TRUST, MONTECELLO LTD.,
GRETA POFCHER, BRENDA MARSH
and CAROLE BIDNICK,

      Plaintiffs,

v.

BENJAMIN B. CHERESKIN, ROBIN P. SELATI,
DAVID M. BROWNE, CLIFF BARTOW,
RICHARD GYDE  and MADISON DEARBORN
CAPITAL PARTNERS II, L.P.

      Defendants.

Case No.

Hon.

FILED - GP

04 OCT -6  AM 9: 11

RONALD C. WESTON, SR., CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT MICH
BY _____

**1 : 0 4 CV 0668**

**Robert Holmes Bell**

**Chief, U.S. District Judge**

---

Thomas G. McNeill (P36895)
Jeffrey G. Muth (P65041)
DICKINSON WRIGHT PLLC
Attorneys for Plaintiffs
500 Woodward Ave., Ste. 4000
Detroit, MI 48226-3425
      and
200 Ottawa Avenue, NW, Suite 900
Grand Rapids, MI  49503

---

## COMPLAINT

There is no other pending unresolved civil action arising out of the same transaction or occurrence alleged in the Complaint.

Plaintiffs The Jamestown Trust, Montecello Ltd., Greta Pofcher, Brenda Marsh and Carole Bidnick ("Plaintiffs"), by their counsel, Dickinson Wright PLLC, state the following as their Complaint:

## PARTIES JURISDICTION AND VENUE

1.     The allegations and causes of action set forth below stem from Defendants' control, manipulation, management and operation of Family Christian Stores, Inc. ("Family Christian Stores" or the "Company") to the detriment and oppression of its minority shareholders, some of whom/which are Plaintiffs in this action.

2.     Established in 1994 and headquartered in Grand Rapids, Michigan, Family Christian Stores is the largest retailer in the United States dedicated solely to the sale of Christian-related products, including Christian books, bibles, gifts, cards, music, children's merchandise and church supplies. The Company sells products through a distribution system comprised of approximately 325 locations with over 5,000 employees in 39 states and an internet web site (www.familychristian.com). Family Christian Stores' annual sales exceed $300 million.

3.     Plaintiff The Jamestown Trust is a minority shareholder in Family Christian Stores, presently owning approximately 5.9% of the Company.  Plaintiff The Jamestown Trust is organized under the laws of the British West Indies, with its principal place of business located in George Town, Grand Cayman, Cayman Islands, British West Indies. The sole Trustee and beneficiary for Plaintiff The Jamestown Trust is George Craig, who is a citizen of the United Kingdom and resides in Grand Cayman, Cayman Islands, British West Indies.  Mr. Craig was Chairman of the Board of Family Christian Stores from 1994 until 1999.

4.     Plaintiff Montecello Ltd. is a minority shareholder in Family Christian Stores, presently owning approximately .05% of the Company.  Plaintiff Montecello Ltd. is organized under The Companies Law of the British West Indies, with its principal place of

2

business located in George Town, Grand Cayman, Cayman Islands, British West Indies, the shares of which are beneficially held by Susan Craig, who is the sole Director. Ms. Craig is a citizen of the United Kingdom and resides in Grand Cayman, Cayman Islands, British West Indies.

5.      Plaintiff Greta Pofcher is a minority shareholder in Family Christian Stores, presently owning approximately .28% of the Company. Plaintiff Greta Pofcher is a citizen of the State of Connecticut and resides in Greenwich, Connecticut.

6.      Plaintiff Brenda Marsh is a minority shareholder in Family Christian Stores, presently owning approximately .15% of the Company. Plaintiff Brenda Marsh is a citizen of the State of New York and resides in Brooklyn, New York.

7.      Plaintiff Carole Bidnick is a minority shareholder in Family Christian Stores, presently owning approximately .12% of the Company. Plaintiff Carole Bidnick is a citizen of the State of California and resides in San Francisco, California.

8.      Formed in 1997, Defendant Madison Dearborn Capital Partners II, L.P. ("Defendant Madison Dearborn") is a $925 million investment fund. It is a limited partnership organized under the laws of Delaware, with its principal place of business located in Chicago, Illinois. Defendant Madison Dearborn's General Partner is Madison Dearborn Partners, Inc., which is incorporated under the laws of Delaware with its principal place of business located in Chicago, Illinois. Through its four funds, Madison Dearborn Partners, Inc. has approximately $7.5 billion in investments.

9.      Defendant Madison Dearborn effectively owned 70% of Family Christian Stores, before it engineered the issuance to itself of a putative new class of preferred stock,

3

Class C, as complained of herein. Defendant Madison Dearborn is the controlling shareholder of Family Christian Stores.

10.     Defendant Benjamin B. Chereskin is a managing director of Madison Dearborn Partners, Inc. and the Chairman of the Board of Family Christian Stores. Defendant Chereskin is a citizen of the State of Illinois and resides in Chicago or one of its suburbs.

11.     Defendant Robin P. Selati is a managing director of Madison Dearborn Partners, Inc. and is a member of the Family Christian Stores Board of Directors. Defendant Selati is a citizen of the State of Illinois and resides in Chicago or one of its suburbs.

12.     Since July 9, 2002, Defendant David M. Browne has served as President and Chief Executive Officer of Family Christian Stores and as a member of its Board of Directors. Madison Dearborn Partners, Inc. recruited and appointed Defendant Browne to those positions. Defendant Browne is a citizen of the State of Ohio and permanently resides in Mason, Ohio, while maintaining a temporary residence in Grand Rapids, Michigan.

13.     Since January, 2004, Defendant Cliff Bartow has served as the Chief Operating Officer of Family Christian Stores and as a member of its Board of Directors. Madison Dearborn Partners, Inc. appointed Defendant Bartow to those positions. Prior to becoming COO and a Director, beginning in August, 2002, Defendant Bartow served as a consultant to the Company. Defendant Bartow is a citizen of the State of Georgia and resides in Atlanta, or one of its suburbs, while maintaining a temporary residence in Grand Rapids.

14.    Defendant Richard Gyde is a member of the Family Christian Stores Board of Directors. Defendant Gyde also is the Chief Executive Officer of Cornerstone Brands, Inc., another company in which Madison Dearborn, Inc. is the controlling shareholder and for which Defendant Chereskin is a member of the Board of Directors. Madison Dearborn, Inc. appointed Defendant Gyde to the Family Christian Stores Board of Directors. Defendant Gyde is a citizen of the State of Ohio and resides in the Cincinnati area.

15.    At the time of the transaction between Defendant Madison Dearborn and Family Christian Stores which is the subject of the allegations at paragraphs 28 to 34 herein, the Family Christian Stores' Board of Directors was comprised of two Managing Directors of Madison Dearborn Partners, Inc. (Defendants Chereskin and Selati), two officers of Family Christian Stores appointed to these positions by Madison Dearborn Partners, Inc. (Defendants Browne and Bartow) and the CEO of another Madison Dearborn Partners, Inc. portfolio company (Defendant Gyde). At all relevant times, Family Christian Stores has not had any independent Directors because each and every Director was, and is, beholden to Madison Dearborn Partners, Inc. Defendants Chereskin, Selati, Browne, Bartow and Gyde collectively are referred to herein as the "Defendant Directors."

16.    This Court properly may exercise subject matter jurisdiction over this action under 28 U.S.C. § 1332, diversity of citizenship, because this is a civil action in which the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States and in which citizens or subjects of a foreign state are additional parties – specifically, (a) Plaintiffs are citizens of Connecticut, New York and California and citizens or subjects of the United Kingdom and the British

5

West Indies; and (b) Defendants are citizens of Illinois, Michigan, Ohio, Georgia and Delaware.

17.     This Court properly may exercise personal jurisdiction over each of the Defendants: Defendants Browne and Bartow have temporary residences in this district; and Defendants Madison Dearborn, Chereskin, Selati and Gyde have engaged in substantial business activities in this district such that this Court's exercise of personal jurisdiction over them does not violate their constitutional right to due process.

18.     Venue is proper in this judicial district under 28 U.S.C. § 1391(a)(2) because a substantial part of the events and omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

19.     In March, 1999, Defendant Madison Dearborn acquired a controlling interest in Family Christian Stores.

20.     At that time, Defendant Madison Dearborn paid existing shareholders (including Plaintiffs) $53,992,000 in cash and conveyed to them $18,606,500 in Class B redeemable preferred stock and $1,000,000 in common stock. Plaintiffs remained as minority shareholders in the Company.

21.     Since March, 1999, Defendant Madison Dearborn has installed and supervised a management team at Family Christian Stores and selected and appointed the members of the Company's Board of Directors.

22.     Since March, 1999, Defendant Madison Dearborn, with the active aid and assistance of the Defendant Directors (during their respective tenures), has managed and

operated Family Christian Stores as its own private fiefdom, in abrogation of Plaintiffs' rights as minority shareholders and to their substantial direct injury and damage.

23.     Since March, 1999, at the direction of Defendant Madison Dearborn, with the aid, assistance, approval and/or acquiescence of the Defendant Directors (during their respective tenures), there have been no annual meetings of the Family Christian Stores shareholders.

24.     Since March, 1999, at the direction Defendant Madison Dearborn, with the aid, assistance, approval and/or acquiescence of the Defendant Directors (during their respective tenures), Family Christian Stores has failed to timely report key management changes and financial events, including, but not limited to, the replacement of Leslie E. Dietzman as the Company's President and Chief Executive Officer in late 2001 or early 2002, the resignation of Craig G. Wassenaar as the Company's Senior Vice President and Chief Financial Officer in 2003, and significant banking transactions in early 2004.

25.     Since Madison Dearborn Partners Inc. replaced Leslie E. Dietzman as CEO in July 2002, at the direction of Defendant Madison Dearborn, with the aid, assistance, approval and/or acquiescence of the Defendant Directors (during their respective tenures), financial reporting practices to the shareholders have been materially diminished, notwithstanding repeated requests from minority shareholders for additional detailed financial information together with explanatory narratives or commentary.

26.     In 2002, at the direction of Defendant Madison Dearborn and Defendants Chereskin and Selati, Family Christian Stores entered into an Executive Employment Agreement and Stock Purchase Agreement with Defendant Browne.

27.     In connection therewith, at the direction of Defendant Madison Dearborn and Defendants Chereskin and Selati, Family Christian Stores sought the approval of its shareholders to certain amendments to the Shareholders' Agreement without disclosing the underlying details of Defendant Browne's compensation and stock bonus arrangement with Family Christian Stores.

28.     This pattern of pervasive, systematic and continuous exclusion of the minority shareholders from the business of Family Christian Stores, and oppression of the minority shareholders, reached its present culmination in a transaction between Defendant Madison Dearborn and Family Christian Stores, made effective January 30, 2004.

29.     In that transaction, Defendant Madison Dearborn made a loan to Family Christian Stores in the amount of $6 million (the "Madison Dearborn Loan"), evidenced by a promissory note (the "Madison Dearborn Note") that is due in full on March 24, 2006. Though unsecured, the Madison Dearborn Note is senior in right of payment to all obligations of Family Christian Stores other than senior bank debt.

30.     Under the terms of the Madison Dearborn Note, the interest rate is ten percent per annum on the unpaid principal amount, payable in cash semi-annually in arrears.

31.     In addition, effective January 30, 2004, Defendant Madison Dearborn guaranteed $8 million of payment obligations to Family Christian Stores' banks (the "Madison Dearborn Guaranty").

32.     In return for the Madison Dearborn Loan and the Madison Dearborn Guaranty, at the direction of Defendant Madison Dearborn, and with the aid, assistance,

8

approval and/or acquiescence of the Defendant Directors, the Company's Board of Directors authorized the immediate issuance to Defendant Madison Dearborn of a new class of preferred capital stock, Class C Stock (120,000 shares), and the conditional issuance to Defendant Madison Dearborn of a second new class of preferred capital stock, Class D Stock (160,000 shares), in the event that the Madison Dearborn Guaranty is drawn.

33.     The new Class C Stock carries with it a $12 million preference upon liquidation or sale of the Company superior to all other classes of stock, including those classes of stock owned by Plaintiffs and the other minority shareholders; thereafter, this class of stock participates on the basis of a formula arbitrarily determined by Defendant Madison Dearborn in remaining liquidation proceeds along with other classes of stock.

34.     The new Class D Stock, if issued, carries with it a $16 million preference upon liquidation or sale of the Company also superior to all other classes of stock (except the Class C Stock), including those classes of stock owned by Plaintiffs and the other minority shareholders; thereafter, this class of stock participates on the basis of a formula arbitrarily determined by Defendant Madison Dearborn in remaining liquidation proceeds along with other classes of stock.

35.     Accordingly, if the Madison Dearborn Guaranty is drawn, upon a sale of Family Christian Stores, Defendant Madison Dearborn would receive repayment of the $6 million Madison Dearborn Loan and then the first $28 million in sales proceeds, before any distributions would be made to the holders of the Class A Stock, Class B Stock and Common Stock.

36.     Present valuations demonstrate that upon a sale of the Company, the minority shareholders, including Plaintiffs, would not receive the full value of their Class B Stock.

37.     If the value of the equity of Family Christian Stores is presumed to be $74 Million (the approximate value at the time of the March, 1999 recapitalization of the Company), the issuance of the Class C Stock has caused a loss in value to the minority shareholders' Class B Stock of approximately $6.7 million, or a loss of 41% in value.

38.     If the value of the equity of Family Christian Stores is presumed to be $74 Million, the issuance of both the Class C Stock and Class D Stock would cause a loss in value to the minority shareholders' Class B Stock of approximately $11.1 million, or a loss of 68% in value.

39.     If management accurately has projected the Company's EBITDA at January 31, 2005 as $19.8 million, the value of the equity in Family Christian Stores would be approximately $82 Million.

40.     If the value of the equity of Family Christian Stores is presumed to be $82 Million, the issuance of the Class C Stock has caused a loss in value to the minority shareholders' Class B Stock of approximately $7.2 million, or a loss of 40% in value.

41.     If the value of the equity of Family Christian Stores is presumed to be $82 Million, the issuance of both the Class C Stock and Class D Stock would cause a loss in value to the minority shareholders' Class B Stock of approximately $12.1 million, or a loss of 67% in value.

42.     Family Christian Stores did not obtain any independent evaluation of the purported fairness, to the Company or to the minority shareholders, of the Madison

Dearborn Loan, the Madison Dearborn Guaranty, the issuance of the Class C Stock or the approval of the issuance of the Class D Stock. Simply put, there was no market or arms length determination of the value to the Company, and the minority shareholders, of this transaction.

43.     The Madison Dearborn Loan and the Madison Dearborn Guaranty do not constitute the most beneficial method of addressing the Company's financial problems and in fact constitute self dealing by Defendants Madison Dearborn, Chereskin and Selati.

44.     Defendant Madison Dearborn's self dealing, and the self dealing of Defendants Chereskin and Selati, with respect to the issuance of the Class C Stock and approval of the issuance of the Class D Stock, effected with the aid, assistance, approval and/or acquiescence of all the Defendant Directors, proximately has caused a direct injury to the Company's minority shareholders, including Plaintiffs.

45.     The purported preferential rights of the Class C Stock and Class D Stock are grossly unfair to the minority shareholders, including Plaintiffs, and constitute grossly excessive consideration to Defendant Madison Dearborn for the Madison Dearborn Loan and the Madison Dearborn Guaranty.

46.     In essence, Defendant Madison Dearborn replaced less than 13 percent of the Company's bank debt (at variable rates) with a coupon rate of 10 percent *and* further extracted an additional 200 percent of equity liquidation preference.

47.     Moreover, the process by which Defendant Madison Dearborn and the Defendant Directors effected the Madison Dearborn Loan and the Madison Dearborn Guaranty, issued the Class C Stock and approved of the issuance of the Class D stock

violated procedural protections that are afforded to the minority shareholders and, among other things, rendered this transaction enjoinable, voidable or compensable in damages.

48.     On January 30, 2004, the Board of Directors of Family Christian Stores purportedly approved amendments to the Restated Articles of Incorporation authorizing the issuance of Class C and Class D Stock.

49.     However, a special meeting of the shareholders to approve such amendments was not scheduled until March 31, 2004.

50.     The Notice of the Special Meeting (the "Notice") was sent with the deliberate purpose of not providing Plaintiffs sufficient time to review, seek advice from professionals, ask questions and receive answers and otherwise develop a solid foundation from which they could make an informed voting and investment decision.

51.     The Notice was transmitted with an Information Statement and Offering Memorandum (the "Offering Memorandum"), which contained numerous deficient disclosures and material omissions concerning the complex transaction.

52.     At this same time, in addition to seeking approval of the issuance of the Class C and Class D Stock, Family Christian Stores requested shareholder approval of prior shareholder actions without identifying the nature and scope of those prior actions.

53.     The proposed amendments to the Restated Articles of Incorporation materially altered or abolished preferential rights with respect to the minority shareholders' Class B Stock and created, altered or abolished a material provision or right in respect of the redemption of the minority shareholders' Class B Stock and common stock.

54.     Accordingly, Section 762(d) of the Michigan Business Corporation Act [referencing Section 621 of the Act] grants to the minority shareholders rights to dissent from the issuance of the Class C and D Stock.

55.     The Notice did not describe the minority shareholders' dissenter's rights and, therefore, was legally deficient.

56.     The Company subsequently cancelled the shareholders' meeting and Defendant Madison Dearborn, as the majority shareholder, took action by written consent in lieu of a meeting and approved the amendments to the Restated Articles of Incorporation, thereby providing the necessary authorization for the issuance of the Class C and Class D Stock to itself.

57.     Plaintiffs are parties to an Amended and Restated Shareholders' Agreement, which provides, among other things, that the minority shareholders have a right to co-invest on the "same terms and conditions" as offered to Defendant Madison Dearborn.

58.     On or about March 29, 2004, Plaintiffs received the Offering Memorandum purporting to offer to them the opportunity to participate in the Madison Dearborn Loan and Madison Dearborn Guaranty on the "same terms and conditions" as offered to Defendant Madison Dearborn.

59.     In fact, the investment opportunity offered to Plaintiffs is not on the same terms and conditions as those offered to Defendant Madison Dearborn. Among other things, the minority shareholders would be required to cash collateralize their participation in the Madison Dearborn Guaranty and relinquish control over the enforcement of the Madison Dearborn Note and the Madison Dearborn Guaranty.

60.     In contrast, Defendant Madison Dearborn was allowed to post a letter of credit in support of the Madison Dearborn Guaranty and Defendant Madison Dearborn retains control over enforcement of the Madison Dearborn Note and the Madison Dearborn Guaranty.

61.     Accordingly, the Offering Memorandum constitutes a breach of the Amended and Restated Shareholders' Agreement.

62.     In further breach of the Amended and Restated Shareholders' Agreement, at the direction of some or all of the Defendants, Family Christian Stores has not provided the minority shareholders with the periodic information as required by the Shareholders' Agreement.

63.     Plaintiffs have made repeated express requests for additional information and explanations which would enable them to develop an informed voting and investment decision concerning the Family Christian Stores co-investment offer but these requests have been refused.

64.     At the direction of some or all the Defendants, Family Christian Stores and Defendant Madison Dearborn unilaterally determined that certain of Plaintiffs' requests are "not relevant" and refused to provide the requested information.

65.     The disclosures provided to Plaintiffs in connection with the purported co-investment offer are misleading and fail to state essential information necessary for Plaintiffs to make an informed investment decision.

66.     For example, although the Offering Memorandum states that Defendant Madison Dearborn is collateralizing its guaranty with cash and marketable securities, the

Madison Dearborn Guaranty itself refers to one or more letters of credit having been posted by Defendant Madison Dearborn.

67.     The Offering Memorandum also misstates the dilutive effect of the issuance of the proposed Class C and Class D Stock and fails to adequately disclose all of Family Christian Stores' directors' interests in the issuance of Class C and Class D Stock to Defendant Madison Dearborn.

68.     Further, the financial statements included with the Offering Memorandum are misleading since they reference the issuance of Class C and Class D stock, yet shareholder authorization to issue such stock had not been obtained.

69.     Continuing with its pattern and practice of operating Family Christian Stores as its own fiefdom, in July, 2004, Defendant Madison Dearborn appointed two new members of the Company's Board of Directors, James Meyer and James Engbers. Such action was taken without advance notice to the minority shareholders, thereby depriving them of an opportunity to consider, evaluate, consult and comment upon these or any other candidates for the Board of Directors.

70.     Defendant Madison Dearborn's unilateral actions in appointing the new Directors, in complete disregard for the minority shareholders' interests, evidences its continuous course of conduct to act its own interests and in the oppression of the minority shareholders.

71.     Based upon the factual allegations above, Defendants have caused Family Christian Stores to breach a multitude of terms of its  Bylaws, the Restated Articles of Incorporation and the Amended and Restated Shareholders' Agreement that are intended to assure and protect the rights of the minority shareholders, including:

15

(a)   failing to conduct annual shareholders meetings, in violation of Section 2, Article I of the Bylaws;

(b)   failing to identify dissenter's rights in a shareholders' notice, in violation of Article I, Section 4 of the Bylaws;

(c)   attempting to transact business not specified in or reasonably related to the notice of a shareholders' meeting, in violation of Section 14, Article I of the Bylaws;

(d)   taking improper action by consent in lieu of a shareholders' meeting, in violation of Section 15, Article I of the Bylaws and Article IV of the Restated Articles of Incorporation;

(e)   misrepresenting the applicable vote threshold and class voting requirements in a solicitation of shareholders' proxies or consents, in violation of Sections 10 and 11 of Article I of the Bylaws;

(f)   failing to notify and thereafter excluding at least one director from actions purportedly taken by the Board of Directors, in violation of Sections 10 and 14 of Article II of the Bylaws;

(g)   effecting unauthorized Board action on matters which, due to conflicts of interest and lack of disinterest, were reserved for shareholders, in violation of Section 5 of Article I of the Bylaws;

(h)   failing to provide financial statements and other required information to shareholders, in violation of Section 1 of the Amended and Restated Shareholders Agreement;  and

(i)   failing to make a co-investment offer to other shareholders at the same price and on the same terms and conditions as afforded Defendant Madison Dearborn, in violation of Section 12 of the Amended and Restated Shareholders Agreement.

## COUNT I

## THE DEFENDANTS' OPPRESSION OF PLAINTIFFS
## IN VIOLATION OF M.C.L.A. § 450.1489

72.   Plaintiffs reassert and reaver the foregoing allegations as if the same were fully set forth herein.

16

73.     At all relevant times, the Defendant Directors, collectively, and Defendant Madison Dearborn, individually, have been in control of Family Christian Stores.

74.     As alleged above, Defendants' conduct is illegal, fraudulent or willfully unfair and oppressive to Plaintiffs, as shareholders of Family Christian Stores.

75.     As alleged above, Defendants' conduct constitutes a continuous course of conduct or a significant action or series of actions that substantially interferes with the interests of Plaintiffs as shareholders in Family Christian Stores, all within the meaning of M.C.L.A. § 1489(3).

76.     Defendants' conduct violates Section 489 of the Michigan Business Corporation Act, MCLA § 450.1489.

77.     Defendants' conduct in violation of Section 489 of the Michigan Business Corporation Act, MCLA § 450.1489, proximately has caused injury, harm and damage directly to Plaintiffs as minority shareholders.

## COUNT II

## BREACH OF FIDUCIARY DUTY BY DEFENDANT MADISON DEARBORN

78.     Plaintiffs reassert and reaver the foregoing allegations as if the same were fully set forth herein.

79.     Defendant Madison Dearborn is the controlling shareholder of Family Christian Stores.

80.     As the controlling shareholder, Defendant Madison Dearborn owes a duty of good faith to Plaintiffs.

81.     Specifically, Defendant Madison Dearborn owes a duty to Plaintiffs to exercise the utmost good faith in the control and management of Family Christian Stores

and to manage the corporation as to Plaintiffs so as to produce to each Plaintiff the best possible return on his, her or its investment.

82.     Defendant Madison Dearborn owes a fiduciary duty to Plaintiffs minority shareholders to act in good faith, with the care of an ordinarily prudent person in similar circumstances and in a manner reasonably believed to be consistent with the best interests of the corporation.

83.     As alleged above, Defendant Madison Dearborn's conduct constitutes breaches of fiduciary duties owed to Plaintiffs.

84.     Defendant Madison Dearborn's breaches of fiduciary duty proximately has caused injury, harm and damage directly to Plaintiffs as minority shareholders.

## **PRAYER FOR RELIEF**

WHEREFORE, based upon the foregoing, Plaintiffs request that this Court enter a judgment in their favor and against Defendants according them the following relief:

A.     All relief to which they may be entitled under Section 489 of the Michigan Business Corporation Act, M.C.L.A. § 450.1489(1), including, without limitation:

> (i)     canceling past oppressive acts that constitute oppressive conduct and prohibiting all future acts that would constitute oppressive conduct;

> (ii)    awarding damages;

B.     All further equitable relief to which they may be entitled, including:

> (i)     an injunction, and related declaratory relief, compelling the Defendant Directors to cause the Company to comply with all aspects of its By-Laws and Restated Articles of Incorporation and the Amended and Restated Shareholders' Agreement;

> (ii)    an injunction, and related declaratory relief, compelling the Defendant Directors to cause the Company to replace the Madison Dearborn Loan, to replace or to void the Madison Dearborn

Guaranty or, alternatively, to rescind or reform the terms and rights of the Class C Stock and Class D Stock.

C.      All such further award of damages for direct injuries as to which Plaintiffs may be entitled and in an amount to be determined by the trier of fact; and/or

D.      All such further equitable and/or legal relief as to which Plaintiffs are determined to be entitled.

## JURY DEMAND

Plaintiffs request a trial by jury as to all such matters as may be submitted to a jury.

DICKINSON WRIGHT PLLC

By: _____
        Thomas G. McNeill (P36895)
        500 Woodward Avenue, Ste. 4000
        Detroit, MI 48226-3425
        (313) 223-3500

and

By: _____
        Jeffrey G. Muth  (P65041)
        200 Ottawa Avenue, NW, Suite 900
        Grand Rapids, MI 49503
        (616) 458-1300

DETROIT 28047-1 832336v05